## BLACKBURN v. MORRISON *et al.*

### No. 355.    Opinion Filed July 12, 1910.

### Rehearing Denied October 17, 1911.

#### (118 Pac. 402.)

1.  **APPEAL AND ERROR**—Indian Territory Procedure—Time of Taking Appeal. Under the federal appellate procedure in force in the Indian Territory before the admission of the state, where application for an appeal was made and allowed in open court during the term at which the judgment appealed from was rendered, the taking of the appeal is of the date of its allowance.

2.  **SAME**—Effect of Delay. Under said procedure, although the record is not filed and the appeal docketed in the appellate court within the time fixed by rule of court, the same will not be dismissed if the record has been filed and the cause docketed before the motion to dismiss is made.

3.  **EXCEPTIONS, BILL OF**—Allowance—Delay in Presentation. A bill of exceptions not presented to the judge at the same term the decree is rendered or within a further time allowed by order of the court at that term, or allowed by standing rule of court and not allowed by consent of the parties, is, save under extraordinary circumstances, invalid.

4.  **APPEAL AND ERROR**—Record—Preservation of Evidence. Where witnesses are examined orally in court in an equity case, the testimony must be reduced to writing, and made part of the record, or it will be disregarded on appeal.

5.  **SAME**—Oral evidence introduced in chancery cases before the court may be made part of the record by having it taken down in writing in open court and by leave or order of court filed with the papers, by bill of exceptions, or by reducing the same to writing, and embodying it as a recital in the record of the decree.

6.  **APPEAL AND ERROR**—Record—Review—Absence of Evidence. The evidence cannot be reviewed for the purpose of ascertaining whether the same supports the decree, when not all the evidence upon which the decree was rendered has been brought into the record.

7.  **FRAUD**—Elements—Intent. A promise accompanied with an intention not to perform it, and made by the promisor for the purpose of deceiving the promisee and inducing him to act, where he otherwise would not have done so, constitutes fraud.

8.  **CANCELLATION OF INSTRUMENTS**—Fraudulent Intent—Pleading—Petition. In an action to cancel a deed alleged to have been procured by false and fraudulent promises, a specific averment that the grantee did not intend at the time he made said promise or contract to carry out the same is not necessary if from

the facts alleged the existence of his fraudulent intent not to carry out his contract can be clearly inferred.

9.     **APPEAL AND ERROR**—Presentation of Questions in Lower Court—Necessity for Ruling.    A party who permits the court to proceed to judgment without acting upon a motion made by him must be deemed to have waived his right to have the same acted upon; and this court will not consider an alleged error of the trial court in refusing to sustain a motion to strike out evidence, when the record does not affirmatively show that the motion was ever acted upon by the court and exceptions taken thereto by the complaining party.

(Syllabus by the Court.)

*Error from the United States Court for the Western District of the Indian Territory, sitting at Tulsa; William R. Lawrence, Judge.*

Action by Henry Morrison and another against A. F. Blackburn.   From a judgment for plaintiffs, defendant brings error.   Affirmed.

Defendants in error brought this action in the United States Court for the Western District of the Indian Territory prior to the admission of the state to cancel a certain deed.   They allege in their amended complaint, filed in the court below on the 24th day of September, 1906, that they are the owners and in possession of the N. E. ¼ of section 34, township 18 N., range 13 E., in the Creek Nation, Ind. T.; that the land in controversy was allotted to their son, Ananias R. Morrison, as the proportionate share of the lands of the Creek Nation to which he was entitled as a member of the Creek Tribe of Indians; that their said son is deceased; and that they are his heirs.   They charge that the deed which they seek to cancel and which was executed by them to plaintiff in error, defendant below, on the 22d day of June, 1906, was procured by fraud.   On the 19th day of October, 1907, before the admission of the state, the court rendered judgment decreeing said deed null and void, and ordering that the same be canceled and set aside.   From that judgment this appeal is prosecuted.

*Randolph & Haver* and *Biddison, Campbell & Eagleton,* for plaintiff in error.

*Merritt Eslick* and *Carroll & Walker,* for defendants in error.

HAYES, J. (after stating the facts as above). Before we proceed to examine the case upon its merits, it is necessary to determine certain questions of practice which have been raised by defendants in error by motion to dismiss and by objections to the sufficiency of the record to authorize this court to review the evidence before the trial court to determine the sufficiency thereof to support the judgment. After judgment was rendered on the 19th day of October, 1907, plaintiff in error at the same term on the 11th day of November, 1907, in open court, prayed for and was allowed an appeal. A supersedeas bond was executed and approved on said day and citation issued returnable in 60 days. The record, however, was not filed and the case was not docketed in this court until the 11th day of August, 1908, and it is contended that this court is without jurisdiction, because the appeal was not taken within six months from the rendition of the judgment in the court below.

By virtue of section 18 of the Enabling Act (Act June 16, 1906, c. 3335, 34 Stat. 277), the Supreme Court of this state has just such jurisdiction to review judgments rendered and entered in actions in the United States courts of the Indian Territory prior to the admission of the state, from which no appeal had been taken to the United States Court of Appeals for the Indian Territory, as that court would have had, if it had not been dissolved by the advent of statehood (*Moberly v. Roth et al.,* 23 Okla. 856, 102 Pac. 182) ; and appeals from such judgments to this court are governed by the appellate procedure in force in the Indian Territory prior to the admission of the state (*Parks v. City of Ada,* 24 Okla. 168, 103 Pac. 607 ; *Riverside Oil & Gas Co. v. Tulsa Water, Light, Heat & Power Co.,* 24 Okla. 323, 103 Pac. 608). They must be taken within six months from the date of the entry of the judgment sought to be reviewed (*Porter et al. v. Brook,* 21 Okla. 885, 97 Pac. 645 ; *Moberly v. Roth et al., supra*) ; but the appeal in the case at bar was taken within that time. Application therefor and allowance of same

having been made in open court during the term at which judgment was rendered, the taking of the appeal is of the date of its allowance. *Radford v. Folsom,* 123 U. S. 725, 8 Sup. Ct. 334, 31 L. Ed. 292; *Dodge v. Knowles,* 114 U. S. 430, 5 Sup. Ct. 1197, 29 L. Ed. 144; *Hewitt v. Filbert,* 116 U. S. 142, 6 Sup. Ct. 319, 29 L. Ed. 581.

When an appeal shall be docketed in the appellate court, after it has been taken, is a matter generally regulated by rule of the court. It was so regulated in the Indian Territory. Rule 16 of the United States Court of Appeals of the Indian Territory (6 Ind. T. 14) makes all appeals, writs of error, and citations returnable not exceeding 60 days from the date of the signing of the citation, whether the return day fall in vacation or in term time, and be served before the return day. Rule 19 provides that in all civil cases when an appeal has been taken more than 90 days and a supersedeas bond has been filed and the appellant has not filed in the office of the clerk an authenticated copy of the record, the appellee may at any time file in the appellate court a certified copy of the judgment appealed from, the order granting the appeal, and the supersedeas bond, with motion to dismiss the appeal or affirm the judgment, and the same will be dismissed or the judgment affirmed, unless good cause be shown against it. Where no provision was made by statute or by rule of court, proceedings in that court were governed by the practice in the United States Court of Appeals of the Eighth Circuit. Rule 22. The procedure theretofore governing appeals from the trial courts of the Indian Territory to the appellate court of that jurisdiction was partly controlled by statute and partly by rule of court, as is generally the case. An authorized rule of court regulating the practice before it and not repugnant to or in conflict with the organic law has all the force of law; and, until repealed or rescinded by the court, is as binding upon the court as a statute. *Rio Grande Irrigation & Colonization Co. v. Gildersleve,* 174 U. S. 603, 19 Sup. Ct. 761, 43 L. Ed. 1103; *Thompson v. Hatch,* 3 Pick. (Mass.) 512; 11 Cyc. 742. We think, therefore, that section 18 of the En-

abling Act, conferring jurisdiction upon this court to review judgments rendered in the Indian Territory before the admission of the state, but not appealed from, just as the appellate court of that jurisdiction could have done if the state had not been admitted, continued in force for the purpose of such cases not only the appellate procedure prescribed by the statute, but that prescribed by rule of court; and the rule of court fixing the time when an appeal must be docketed in that court may be looked to to determine whether the case at bar should be dismissed because of irregularity in docketing same. The various federal Circuit Courts of Appeals have a rule similar to rule 19 of the United States Court of Appeals of the Indian Territory. Rule 16 of the Circuit Court of Appeals for the Eighth Circuit makes it the duty of an appellant to docket his case and file the record therein with the clerk of the court before the return day; and if he fails to do so, the appellee may have the cause docketed and dismissed upon producing a certificate from the clerk of the court wherein the judgment or decree was rendered, stating the case, and certifying that such writ of error or appeal has been duly sued out or allowed. 11 C. C. A. cvi, 47 Fed. viii. This rule, in the same or similar language, exists in all the Circuit Courts and in the Supreme Court of the United States, but in the application thereof, since *Owings et al. v. Lessee of Tiernan,* 10 Pet. 24, 9 L. Ed. 333, it has been held that a cause, although not docketed within the time fixed by the rule, if the record has been filed and the cause docketed before motion is made for dismissal, the same will not be dismissed. Such is the uniform practice in the various Circuit Courts of Appeals so far as has been called to our attention. *West Chicago Street Ry. Co. v. Ellsworth,* 77 Fed. 664, 23 C. C. A. 393, where the various authorities are collected and cited. The motion to dismiss was not filed until long after the record was filed in this court, the cause docketed, and plaintiff in error had filed his printed brief. No effort has been made to show, nor does it appear, that any injury has resulted from the delay complained of; and the appeal should not be dismissed. *Incorporated Town*

of *Gilman v. Fernald,* 141 Fed. 940, 72 C. C. A. 666; *Love et al. v. Busch et al.,* 142 Fed. 429, 73 C. C. A. 545.

The decree recites that by agreement of the parties the cause was submitted to the court upon the evidence theretofore taken before the master in chancery and upon oral testimony heard in open court and upon the original and amended complaint of defendants in error and the answer of plaintiff in error. Neither the evidence nor the substance thereof is set out in the decree. There was an attempt to make all the evidence a part of the record by bill of exceptions, but the bill of exceptions was not allowed by the trial judge until after the expiration of the term at which the decree was rendered. There was no order or rule of court authorizing a bill of exceptions after the term, nor was there consent by defendants in error that the same might be done. It is well settled in the federal practice that a formal bill of exceptions not presented to the judge at the same term the decree is rendered or within a further time allowed by order of court at that term, or by standing rule of court, or upon consent of the parties, save under very extraordinary circumstances, cannot be allowed. *Michigan Ins. Bank v. Eldred,* 130 U. S. 693, 9 Sup. Ct. 690, 32 L. Ed. 1080; *Missouri, K. & T. Ry. Co. v. Russell,* 60 Fed. 501, 9 C. C. A. 108. And a bill of exceptions signed by the judge after the term, where no time was given by order of court, is a nullity. *Carroll v. Saunders,* 38 Ark. 216; *Kearney v. Moose et al.,* 37 Ark. 37.

It appears that counsel for plaintiff in error does not insist that the pretended bill of exceptions in this case is valid, but he insists that, since this is an action in equity, no bill of exceptions is necessary to make the evidence a part of the record. That under the practice in the English chancery and under the chancery practice in those jurisdictions of the United States where the witnesses are all examined before the master in chancery, and their testimony reduced to writing and read at the hearing, no bill of exceptions is necessary to make the testimony part of the record, is well settled. 3 Encyc. of Plead. & Prac. p. 381, and authorities there cited. But in those jurisdictions

where the modern equity practice permits the hearing of oral evidence by the court, there is a conflict in the cases whether the evidence is part of the record, unless made so by bill of exceptions or otherwise. That it is not part of the record, unless made so, is the rule in the federal courts, and seems to be supported by the weight of authority from the state courts. *Blease v. Garlington,* 92 U. S. 1, 23 L. Ed. 521; *The Philadelphian,* 60. Fed. 423, 9 C. C. A. 54; *Mears v. Lockhart,* 94 Fed. 274, 36 C. C. A. 239; *Southern Bldg. & Loan Ass'n v. Carey* (C. C.) 117 Fed. 325.

In *Blease v. Garlington, supra,* Mr. Chief Justice Waite, delivering the opinion of the court, said:

"While, therefore, we do not say that even since the Revised Statutes the Circuit Courts may not in their discretion, under the operation of the rules, permit the examination of witnesses orally in open court upon the hearing of cases in equity, we do say that now they are not by law required to do so; and that, if such practice is adopted in any case, the testimony presented in that form must be taken down or its substance stated in writing, and made part of the record, or it will be entirely disregarded here on an appeal."

By what method such oral testimony is to be made part of the record in the federal courts, as was said by the court in *Southern Bldg. & Loan Association v. Carey, supra,* neither the decided cases nor textbooks on practice or rules furnish any light. At paragraph 1959, 2 Rose's Code of Federal Procedure, the rule is declared to be that, where witnesses are examined orally in court in an equity case, the testimony must be reduced to writing and made part of the record or it will be disregarded on appeal, citing the various federal cases supporting the rule; but that excellent work does not suggest how or cite any authority that decides how such evidence is to be made part of the record. In the recent issue of 4 American & English Encyc. of Law & Practice, at page 184, in the discussion of this question, it is said:

"The modern equity practice largely permits the hearing of oral evidence, and the mode of preserving the evidence in the record for purpose of review has approached the practice as in

actions at common law; and, while some cases hold that such testimony may not be made part of the record by bill of exceptions or otherwise, it is becoming the general rule, following the statutory changes in procedure, that such evidence must be duly incorporated into the appeal record."

The practice in Arkansas, from which state the Code of Civil Procedure in force in the Indian Territory was adopted, is that oral evidence introduced in chancery cases before the court may be made part of the record by having it taken down in writing in open court and by leave filed with the papers, by bill of exceptions, or by reducing the same to writing and embodying it as a recital in the record of the decree. *Casteel v. Casteel,* 38 Ark. 477; *Benjamin v. Birmingham,* 50 Ark. 433, 8 S. W. 183. The same rule prevails in Tennessee. *Nance v. Chesney,* 101 Tenn. 466, 47 S. W. 690; *Hill v. Bowers,* 4 Heisk. (Tenn.) 272; *Davidson Lumber Co. v. Jones* (Tenn. Ch.) 62 S. W. 386. See, also, *Miller v. Brown,* 1 Neb. Unof. 754, 95 N. W. 797; *Hughes v. Love,* 136 Mich. 169, 98 N. W. 977; *Reams v. McHargue,* 111 Ky. 163, 63 S. W. 437. In some jurisdictions such evidence may be made part of the record upon certificate of the judge, but such practice seems to be based upon a statute. *Arts v. Culbertson,* 73 Iowa, 14, 34 N. W. 490; *Smith v. Newland,* 40 Ill. 100; *Kavaleir et al. v. Machula et al.,* 77 Iowa, 121, 41 N. W. 590. The practice prevailing in Arkansas is supported by reason, and is in harmony with the weight of authorities. No effort was made to make the oral testimony heard by the court in the case at bar part of the record, either by order of court or recital in the decree. The attempted bill of exceptions is invalid; and we therefore hold that such evidence has never become a part of the record.

Since all the evidence upon which the decree was rendered has not been brought into the record and is not now before us, we cannot consider those assignments of error which require us to review the evidence for the purpose of ascertaining whether the same supports the decree. *Ind. Southern Ry. Co. v. Liverpool, London & Globe Insurance Co.,* 109 U. S. 168, 3 Sup. Ct.

108, 27 L. Ed. 895; *Casteel v. Casteel, supra; Meeks v. State,* 80 Ark. 579, 98 S. W. 378.

There was general demurrer to the amended petition, which was overruled. The amended petition consists of 11 paragraphs, the first and second of which allege plaintiffs' ownership of the land in controversy, and the sourse of their title. Paragraph 3 reads:

"That on the 22d day of June, 1906, one C. L. Leeds, of Tulsa, Ind. T., came to the residence of plaintiffs near Fry, Ind. T., and offered to buy said land, and by promising and agreeing to pay plaintiffs the sum of $4,000 in cash for said land the said Leeds induced plaintiffs to sign and deliver to him a warranty deed conveying said land to the defendant A. F. Blackburn. Said deed is recorded in the office of the clerk of the United States court at Tulsa, and a certified copy is hereto attached, marked Exhibit 'Deed,' and made a part of this complaint."

Paragraph 4 alleges that plaintiffs do not speak or understand the English language correctly and that the deed was not read over and explained to them, and that they did not know the consideration recited in the same. Paragraph 5 reads:

"That, after plaintiffs had executed and delivered said deed to said Leeds, he told them that he did not have the money with which to pay for said land, and assured them that they would be paid for the same the next morning at a certain bank in Broken Arrow, Ind. T., and, while plaintiffs expected to be paid in cash for their said land, they relied upon the promise of said Leeds, and, on going to the bank designated by said Leeds the next morning and inquiring for their said money, they were informed that there was no money at the bank for them, and that neither said Leeds nor the defendant Blackburn had made any arrangement with the bank to pay them for said land."

Paragraphs 6, 7, and 8 allege that the purchase price has never been paid to plaintiffs, that plaintiffs demanded payment of same or a reconveyance of the land, both of which have been refused by defendant, and allege that the land is in fact worth more than the consideration agreed to be paid by defendant for same. Paragraph 9 reads:

"And plaintiffs further state and allege that the said Leeds

was the agent of the defendant Blackburn and acted under his instructions and directions, and with his consent and approval in inducing plaintiffs to execute and deliver said deed with the sole purpose and intent of defrauding plaintiffs of their said land."

The remaining paragraphs allege the ratification by defendant of the acts of said Leeds, and pray for judgment of the court declaring the deed fraudulent and void and ordering the same to be canceled.

The amended petition is somewhat inartificially drawn, and the meaning of the pleader is not entirely clear, but we think a fair interpretation to be that it charges that there was a negotiation between plaintiffs and defendant, acting through his agent Leeds, for the sale by plaintiffs to defendant of the land in question for $4,000 in cash; but that, when the sale had been agreed upon and plaintiffs came to execute and deliver the deed, Leeds told them that he did not have the money with which to pay them, but that they would be paid on the next day at a certain bank in Broken Arrow, Ind. T. Plaintiffs executed the deed and delivered same to Leeds, relying upon said promise. The petition does not seem to undertake to allege a false representation of any existing fact as a basis of the fraud for which a cancellation is sought, but a promise to be performed in the future. There is no charge that defendant represented that he had money in a certain bank in Broken Arrow which would be paid to them by the bank on the next day, and that defendant, in fact, had no money at said bank, nor. is it charged that defendant represented that he had any arrangements with said bank to pay to plaintiffs the purchase price, when, in fact, he had none; the sole charge being that he promised them that they would be paid at a certain bank on the next day, upon which promise they relied, but were not paid.

As a general rule, in order for false representations to be the basis of fraud, such representations must be relative to existing facts or facts which previously existed, and cannot be founded upon promises as to future acts. 20 Cyc. p. 20. There is, however, the exception to the foregoing general rule, that if the

promise is accompanied with an intention not to perform it, and is made for the purpose of deceiving the promisee and inducing him to act where otherwise he would not have done so, the same constitutes fraud. *Donaldson, Assignee, v. Farwell et al.,* 93 U. S. 631, 23 L. Ed. 993; *Goodwin v. Horne,* 60 N. H. 485; 1 Bigelow on Fraud, 485. The gist of the fraud in the cases sup· porting the foregoing rule is not the breach of a promise, but the fraudulent intent of the promisor or obligor at the time he makes the·promise or executes the contract, not to perform the same, and to deceive the obligee by his false promise.

In the case at bar there is no specific averment that defendant, at the time he promised plaintiffs they would be paid the consideration for the deed on the day following the execution thereof, did not intend to perform said promise; and it is held in *Re Harker's Estate,* 113 Iowa, 584, 85 N. W. 786, that a specific averment that a contracting party did not intend to carry out his contract without the statement of any facts whatever establishing such intent, except the ultimate failure to perform the agreement, is not a sufficient allegation of fraud to maintain an action; but it is a well-settled rule that a specific averment of the fraudulent intent is not required if the facts alleged are such that the existence of the fraudulent intent can be clearly inferred therefrom. 20 Cyc. 101. We think the petition in the case at bar fulfills this requirement. Defendant negotiated with plaintiffs for a purchase of their land upon the representation and promise that the consideration to be paid would be cash. With such understanding, an agreement of sale was reached, the deed was executed and delivered to defendant, whereupon defendant stated that he did not have the cash in hand to pay the purchase price, but that the same would be paid the next morning; but it was not paid on the next day, and has never been paid. The deed was placed upon record, and, when payment was· demanded by plaintiffs, it was refused, and a reconveyance of the property was refused. Defendant now holds plaintiffs' property without having paid any consideration therefor. Mere failure to pay the purchase price of property promised to be

paid in the future is not, alone, sufficient to make the incipiency of the transaction fraudulent; but the understanding between the parties in this case was that the purchase price should be cash, and, because there was a brief time agreed upon for the grantee to pay over the cash, did not change the character of the transaction from a cash sale to a credit transaction. It would be an unreasonable presumption to presume that defendant's refusal without explanation within so brief a time to pay over the consideration agreed upon did not flow from an intent not to do so at the time of the delivery of the deed. In *Dowd v. Tucker,* 41 Conn. 97, an aunt of the respondent, who had given him by her will all her property, desired upon her deathbed to change her will to give a certain piece of real estate to a niece, and had a codicil prepared for that purpose. Before signing it, respondent assured her that it was not necessary for her to sign the codicil; that he would deed the property to the niece and carry out her wishes. Upon her death thereafter, he refused to carry out the promise. The court in the opinion said:

"Now, it is a presumption of law that a party intends to do what in fact he does; and, the fact appearing in the case that after the property came into the hands of the respondent he at all times absolutely refused to convey it to the petitioner, it must be that during some period of time previous to his first refusal he must have so intended; and inasmuch as there is nothing in the case which goes to show a different intention at any previous time, it is reasonable to presume that this intention existed during the short period of time that had intervened since the promise was made, and existed at the time it was made, from which it follows that the promise was made in bad faith, with the dishonest intention to do what he afterwards did. If this was so, the case clearly is one of fraud. It is the case of one obtaining the conveyance of property by a promise which he has no intention at the time to fulfill."

See, also, *Chicago, Texas & Mexican Central Ry. Co. v. Titterington,* 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39.

After the issues upon the pleadings were made up, the cause was referred to the master in chancery to hear the evidence and report findings of fact and conclusions of law. After a large

portion or all the evidence had been introduced before the master, there was a motion by defendant to strike out certain portions thereof. In one of the assignments of error urged, it is complained that judgment was rendered without said motion ever having been ruled upon. When the motion was made before the master, request was made by counsel for plaintiffs for opportunity to be heard upon the motion after they had an opportunity to examine the transcript of the evidence. Whereupon the master granted said request, and stated that he would reserve his ruling until later. The record fails to disclose that the motion was ever ruled upon by the master or the court, or that the same was ever called to the attention of either the master or the court by any one thereafter. Defendant, having permitted the court to proceed to judgment without acting upon his motion, must be deemed to have waived his right to have the same acted upon; and, in the absence of affirmative showing by the record that the same was acted upon adversely to plaintiffs, and exceptions thereto taken at the time, this assignment cannot be considered. *Ecker v. Ecker,* 22 Okla. 873, 98 Pac. 918, 20 L. R. A. (N. S.) 421; *Saxon v. White,* 21 Okla. 194, 95 Pac. 783.

After evidence had been introduced before the master and the case closed, there was a motion to reopen the case, which was by the master allowed, and subsequently there was a motion before the court to set aside the order of the master reopening the case, which was overruled. Both of said motions were made by defendant. Thereafter additional evidence was heard by the court, and these acts are urged as error; but these alleged errors of the court must also be deemed to have been waived by defendant for the reason that the decree recites that the case was submitted to the court by agreement of the parties upon the evidence taken before the master and before the court.

Finding no error in the record requiring a reversal of the cause, the judgment of the trial court is affirmed.

All the Justices concur.